## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOREEN BERGER; TESSA** | : | **No. 4:23cv1557** |
| **CHARLES; ANITRA HAMPE;** | : | |
| **LORI ANN KLOPP; SABRINA** | : | **(Judge Munley)** |
| **SCHOMBURG; LISA STAHL;** | : | |
| **AND RANDY STROUP,** | : | |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **SPRINGS WINDOW FASHIONS, a** | : | |
| **limited liability corporation,** | : | |
| **Defendant** | : | |

·····································································

### MEMORANDUM

Plaintiffs Doreen Berger, Tessa Charles, Anitra Hampe, Lori Ann Klopp,

Sabrina Schomburg, Lisa Stahl, and Randy Stroup assert claims against their

former employer, Defendant Springs Window Fashions, for religious

discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e *et seq.* and the Pennsylvania Human Relations Act, 43 PA. STAT.

§§ 951, *et seq.* ("PHRA").  Plaintiffs also assert claims for violation of the Equal

Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983

("Section 1983").

Before the court is a motion to dismiss plaintiffs' complaint filed by the defendant.[1]  The parties have briefed their respective positions, and the matter is ripe for a decision.

## Background

On August 18, 2021, defendant imposed a COVID-19 policy requiring all of their employees to be fully vaccinated by the end of September.[2]  (Doc. 1, Compl. ¶ 14).  Alternatively, employees could request a reasonable accommodation. (Id.)  According to defendant's policy, accommodations would be granted so long as they did not cause undue hardship or endanger the health and safety of others. (Id. ¶ 20).  Otherwise, noncompliant employees would be placed on unpaid leave until their employment status was determined by defendant's human resources department. (Id. ¶ 16).  Plaintiffs asked for religious exemptions to the policy. (Id. ¶16).  Defendant denied their requests. (Id. ¶ 50).  Defendant then terminated the plaintiffs. (Id. ¶ 51).

---

[1] Initially, this case was filed as a class action, but the parties later removed such reference from the caption. (Doc. 22).  This moots defendant's argument in its motion to dismiss that the plaintiffs failed to allege the requirements for a class action under Federal Rule of Civil Procedure 23.  Additionally, the parties jointly stipulated to remove Defendant Springs Window Fashions Manufacturing Co., USA, Inc. from this action. (Doc. 21).  This stipulation also moots any arguments that plaintiffs failed to state a claim against this former defendant.

[2] These background facts are derived from plaintiffs' complaint.  At this stage of the proceedings, the court must accept all factual allegations as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).  The court makes no determination, however, as to the ultimate veracity of these assertions.

Plaintiffs assert that their religious accommodation requests were reasonable and would not have created an undue hardship to the defendant because COVID-19 vaccines were ineffective in preventing the spread of the virus. (Id. ¶¶ 19, 34). Thus, plaintiffs allege that defendant's refusal to accommodate their sincerely held religious beliefs constituted religious discrimination under Title VII and the PHRA and violated the Equal Protection Clause of the Fourteenth Amendment. (Id. ¶¶ 7-13).

Based upon the above allegations, plaintiffs filed the instant complaint. Count I and Count III raise claims under Title VII and the PHRA for religious discrimination and for failure to provide reasonable accommodation. Count II asserts Equal Protection Clause violations under Section 1983. Defendant responded to the complaint with a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 11).

**Jurisdiction**

Because this case is brought pursuant to Title VII and Section 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiffs' PHRA claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have

3

supplemental jurisdiction over all other claims that are so related to claims in the

action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution.").

**Legal Standard**

Defendant filed its motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations

when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, "a complaint must provide 'a short and plain

statement of the claim showing that the pleader is entitled to relief.' " Doe v.

Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P.

8(a)(2)).  That means, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  A claim has facial plausibility when factual content is pled that

allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all

factual allegations as true, construe the complaint in the light most favorable to

4

the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

## Analysis

Defendant seeks dismissal of all causes of action asserted in plaintiffs' complaint, that is, their Title VII, PHRA, and Section 1983 claims. For ease of disposition, the court will first address plaintiffs' Title VII and PHRA claims.[3]

### 1. Plaintiffs' Title VII/PHRA Religious Discrimination Claims

Count I of plaintiffs' complaint asserts that defendant's COVID-19 vaccination policy violated Title VII and the PHRA by discriminating against them based on their religious beliefs. (Doc. 1, ¶¶ 25-36). Count III contends that, in implementing the policy, defendant failed to accommodate the plaintiffs' religious beliefs. (Id. ¶¶ 48-53).

---

[3] For purposes of the religious discrimination claim, the term "religious creed" as used in the PHRA is construed to carry the same meaning as "religion" under Title VII. See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) ("The language of the PHRA is also substantially similar to these anti-retaliation provisions, and we have held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently."); See also Pennsylvania State Univ. v. Com., Pennsylvania Hum. Rels. Comm'n, 505 A.2d 1053, 1056 (Pa. Commw. Ct. 1986) ("In light of the Pennsylvania Supreme Court's favorable view of the United States Supreme Court's interpretation of the federal analogue to the Pennsylvania statute, and the commission's own adoption of the federal law's definition of "religion," there is no sound legal basis for the commission's rejection of the existing judicial interpretation of the reasonable accommodation and undue hardship standards embodied in that self same [sic] definition.").

As a preliminary matter, plaintiffs opposed the motion to dismiss by attaching the religious exemption requests they submitted to the defendant. (Doc. 17-5, Pl. Br. in Opp. Ex. D).  Defendant contends that by filing these exhibits, plaintiffs concede that their complaint is inadequately pled, and that this is an attempt to amend the complaint through briefing. (Doc. 20, Def. Br. in Opp. at 7). The court agrees with defendant.

Under the law, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b)(6) motion. <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  A court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Id.</u> (citations omitted).  Furthermore, where a document is integral to or explicitly relied upon in the complaint, it may be considered without converting a motion to dismiss for failure to state a claim into one for summary judgment under Rule 56.  <u>Doe</u>, 30 F.4th at 343 (citations and internal quotation marks omitted).

Although plaintiffs plead in the complaint that they submitted religious exemption requests via email, (Doc. 1, Compl. ¶¶ 18, 31), they did not attach those requests, explicitly rely upon or quote excerpts from those requests, nor

6

did they address the content of those requests in their complaint.  Yet now,

plaintiffs rely upon the content of these requests in asserting their claims.  "[A]

complaint may not be amended by the briefs in opposition to a motion to

dismiss." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d

Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107

(7th Cir.1984), cert. denied, 470 U.S. 1054 (1984).  Thus, the court will not

consider the religious exemption requests in deciding whether plaintiffs'

complaint states a religious discrimination claim under Title VII and the PHRA.

Turning to the facts actually alleged by the plaintiffs in the complaint,

employers are prohibited under Title VII from discriminating against an individual

in hiring, discharge, compensation, term, conditions, or privileges of employment

on the basis of his or her religion. 42 U.S.C. § 2000e-2(a)(1); Webb v. City of

Philadelphia, 562 F.3d 256, 259 (3d Cir. 2009) (citing 42 U.S.C. § 2000e–

2(a)(1)).  Title VII affords protection to "all aspects of religious observance and

practice, as well as belief, unless an employer demonstrates that he is unable to

reasonably accommodate . . . an employee's . . . religious observance or practice

without undue hardship on the . . . employer's business." 42 U.S.C. § 2000e(j).

To assert a claim for religious discrimination, employees must proceed

under either a "disparate treatment" or a "failure to accommodate" theory.

Abramson v. William Paterson College of N.J., 260 F.3d 265, 281 (3d Cir. 2001);

7

Wallace v. City of Philadelphia, 2010 WL 1730850, at *6 (E.D. Pa. Apr. 26,

2010).  Here, plaintiffs allege a religious discrimination claim under the "failure to

accommodate" theory.

    Title VII requires employers to make reasonable accommodations for their

employees' religious beliefs and practices unless doing so would result in "undue

hardship" to the employer. See 42 U.S.C. § 2000e(j).  To establish a *prima facie*

case of religious discrimination under the "failure to accommodate" theory,

plaintiffs must show that (1) they held a sincere religious belief that conflicted

with a job requirement, (2) they informed their employer of the conflict, and (3)

they were disciplined for failing to comply with the conflicting request. Fallon v.

Mercy Cath. Med. Ctr. of Se. Pennsylvania, 877 F.3d 487, 490 (3d Cir. 2017);

see also Webb, 562 F.3d at 259.  However, the *prima facie* case is an evidentiary

standard, as opposed to a pleading requirement. Connelly v. Lane Const. Corp.,

809 F.3d 780, 789 (3d Cir. 2016); see also Swierkiewicz v. Sorema N. A., 534

U.S. 506, 510 (2002).  At this juncture, plaintiffs need not establish each and

every element of a *prima facie* case to survive a motion to dismiss, rather "it is

enough for [them] to allege sufficient facts to raise a reasonable expectation that

discovery will uncover proof of [their] claims." Connelly, 809 F.3d at 789.

    According to defendant, plaintiffs' discrimination claims are devoid of any

connection to religion as they boil down to mere scientific objections to COVID-

19 vaccinations. (Doc. 12, Def. Br. in Supp. at 8).  Plaintiffs counter that they have adequately pleaded their *prima facie* case of religious discrimination. (Doc. 17, Br. in Opp. at 9).

Whether an employee has a sincere religious belief is a difficult task for courts, especially when determining "whether a nontraditional faith requires the protections of the First Amendment and/or of Title VII." Fallon, 877 F.3d at 490. "[C]ourts in this sense are not free to reject [religious] beliefs because they consider them 'incomprehensible.' " United States v. Seeger, 380 U.S. 163, 185 (1965). The law does not mandate religious beliefs to be "acceptable, logical, consistent, or comprehensible to others[.]" Thomas v. Review Bd. of Ind. Emp't Sec. Div.,450 U.S. 707, 714 (1981).

However, an individual's religious beliefs do not immunize him or her from legal responsibilities shared by all members of society.  Although judges "are ill-equipped to examine the breadth and content of an avowed religion . . . when an individual invokes the [F]irst [A]mendment to shield himself or herself from otherwise legitimate state regulation, [judges] are required to make such uneasy differentiations." Africa v. Commonwealth of Pennsylvania, 662 F.2d 1025, 1031 (3d Cir. 1981).  For this purpose, the Third Circuit Court of Appeals adopted a three-factor test in Africa, to determine whether a belief is religious in nature. Id. at 1032.  This test provides in relevant part:

9

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

Id. (citing Malnak v. Yogi, 592 F.2d 197, 207-10 (3d Cir. 1979)).

The first Africa factor requires that a religion and its beliefs "consider and attempt to come to terms with what could best be described as 'ultimate' questions-questions having to do with, among other things, life and death, right and wrong, and good and evil." Id. at 1033 (quoting Founding Church of Scientology v. United States, 409 F.2d 1146, 1160 (D.C. Cir. 1969)).  Under the second factor, they must be part of a "comprehensive belief system" framework to constitute a religion. Id. at 1035.  "[R]eligion is not generally confined to one question or one moral teaching; it has a broader scope.  It lays claim to an ultimate and comprehensive 'truth." Id. (quoting Malnak, 592 F.2d at 209). Finally, the third factor relates to "any formal, external, or surface signs" that may be compared to accepted religions, including "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observance of holidays and other similar manifestations associated with the traditional religions." Id. at 1035-36 (quoting Malnak, 592 F.2d at 209).

In the case at hand, the complaint is silent regarding plaintiffs' religious beliefs. Thus, it fails to implicate any of the Africa factors.  Plaintiffs only allege

10

that, upon learning of the COVID-19 policy, they submitted requests for religious accommodations via email. (Doc. 1, Compl. ¶¶ 18, 30, 31).  Beyond that, the complaint fails to explain what religious beliefs plaintiffs held and how they were affected by the policy.  Instead of elaborating on how the COVID-19 vaccines conflicted with their religious beliefs, plaintiffs chose to dwell on how the vaccines failed to prevent the spread of COVID-19 in their allegations.

Courts draw the line when plaintiffs seek to use their religious beliefs as a blanket privilege to avoid unwanted legal obligations. Africa, 662 F.2d at 1030, 1031.  When an employee's beliefs are "essentially political, sociological, or philosophical," his or her Title VII religious discrimination claim must fail. Fallon, 877 F.3d at 490 (quoting Seeger, 380 U.S. at 165).  As the Third Circuit previously explained, a "sincere opposition to vaccination" is insufficient to establish religious discrimination. Brown v. Children's Hosp. of Philadelphia, 794 Fed. App'x. 227 (2020) (quoting Fallon, 877 F.3d at 490).  In Brown, a *pro se* plaintiff sued her former employer under Title VII for religious discrimination. Id. The employer fired the plaintiff for her failure to comply with its flu-vaccination policy. Id.  She alleged that her employer unlawfully terminated her employment after failing to accommodate her religious beliefs. Id. The Third Circuit rejected plaintiff's "failure to accommodate" claim because her "concern that the flu

vaccine may do more harm than good . . . is a medical belief, not a religious one." Id. at 227-228 (quoting Fallon, 877 F.3d at 492).

Here, as alleged, plaintiffs' opposition to defendant's COVID-19 rests purely upon non-religious reasons. For instance, plaintiffs plead in their complaint that "masks were ineffective in preventing the spread or infection with COVID-19 according to the March 12, 2021, [Centers for Disease Control and Prevention] report." (Doc. 1, Compl. ¶ 15). Moreover, plaintiffs appear to challenge the effectiveness of the COVID-19 vaccines as they contend that those vaccines failed to prevent: 1) the spread of COVID-19; 2) COVID-19 infection; and 3) serious injury or death from COVID-19. (Id. ¶¶ 21, 33). Additionally, plaintiffs maintain that "[n]umerous studies from countries across the world are showing that vaccinated individuals are the ones being infected with COVID-19, not the unvaccinated." (Id. ¶ 22). Per plaintiffs, "the CDC now states as of August 23, 2023, that people that received the 'vaccines' are more capable of causing COVID-19 infections in others." (Id. ¶ 23). Lastly, plaintiffs reference studies and publications related to the failure of the COVID-19 vaccine to prevent the spread of the virus. (Id. ¶¶ 41-45). The complaint contains no reference whatsoever to how defendant's COVID-19 policy conflicted with or offended the plaintiffs' religious beliefs.

Since the allegations related to plaintiffs' opposition to defendant's COVID-19 policy do not amount to sincere religious beliefs that conflicted with a job requirement, plaintiffs complaint fails to meet the first prong of a *prima facie* case for religious discrimination.  Plaintiffs' Title VII and PHRA claims in Counts I and III of the complaint are thus subject to dismissal.[4]

## 2. Plaintiffs' Section 1983 Claims

Plaintiffs also assert that defendant's COVID-19 vaccination policy is unconstitutional.[5]  Specifically, in Count II of their complaint, plaintiffs allege that

---

[4] As alternative grounds for dismissal, defendant asserts that Plaintiffs Anitra Hampe and Sabrina Schomburg's Title VII claims are time-barred. (Doc. 12, Def. Br. in Supp. at 14-16). Because all of the plaintiffs' claims under Title VII will be dismissed, the court need not reach this argument.

[5] This section of the memorandum addresses alleged violations of the United States Constitution.  In Count I of their complaint, plaintiffs also quoted Article I, Section 3 of the Pennsylvania Constitution related to religious freedom without further explanation as to how this section applies to the current issue. (Doc. 1 ¶ 27).  Plaintiffs neither expressly alleged violation of this provision nor alleged facts to that effect.  In doing so, plaintiffs' complaint simply asserts a "blanket privilege" and "a limitless excuse for avoiding all unwanted legal obligations." Africa, 662 F.2d at 1030-31.

Moreover, Article I of the Pennsylvania Constitution "is entitled 'Declaration of Rights' and all of the first twenty-six sections" of this Article "must be read as limiting the powers of government to interfere with the rights provided therein." Commonwealth by Shapp v. Nat'l Gettysburg Battlefield Tower, Inc., 311 A.2d 588, 592 (Pa. 1973).  This entails that Article I provisions "are only intended to be limits upon the actions of the state government." Murphy v. Harleysville Mut. Ins. Co., 422 A.2d 1097, 1104 (Pa. Super. Ct. 1980).  As discussed below, the complaint lacks any involvement of a state actor in this matter.

Furthermore, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011); see also Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006). Nevertheless, equitable remedies for violations of the Pennsylvania Constitution are still available for plaintiffs who state a valid claim for injunctive relief. Id. at 688.  Here, plaintiffs

the defendant violated the Equal Protection Clause by firing unvaccinated employees who requested religious exemptions to the COVID-19 policy.[6] (Doc. 1, ¶ 47). In turn, plaintiffs' complaint seeks money damages from the defendant. (Id., Prayer for Relief, ¶ B).

Section 1 of the Fourteenth Amendment provides that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of the law; nor deny to any person within its jurisdiction the equal protection of the law.

U.S. CONST. AMEND. XIV, § 1.

By its terms, the text of the Fourteenth Amendment places restrictions on the States, not private individuals. See Civil Rights Cases, 109 U.S. 3, 11-12 (1883). Thus, "[b]ecause the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.' " Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982).

---

only seek monetary damages as opposed to an injunctive relief against defendant. (Doc. 1, Comp. at 13). Thus, the motion to dismiss plaintiffs' state constitutional claims will be granted to the extent that they are raised in plaintiffs' complaint.

[6] Plaintiffs also reference the Nuremberg Code in the complaint without stating an independent cause of action. Thus, the court will dismiss plaintiffs' attempt to compare the COVID-19 vaccination policy to the forced medical experiments of the Nazi regime. See Finkbeiner v. Geisinger Clinic, 623 F. Supp. 3d 458, 464 n. 24 (M.D. Pa. 2022) ("Courts have been similarly dismissive of base analogies between the forced medical experiments of the Nazi regime and the choice that [plaintiff], and other workers, have been given.").

Section 1983 provides a civil remedy against individuals who, under color of state law, deprive another of rights secured by the Constitution or federal law. Id. To establish a claim under Section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).[7] Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id.

In moving to dismiss the plaintiffs' Section 1983 claims, defendant argues that the complaint features no allegations that the defendant was a state actor when it imposed the COVID-19 vaccination policy on its workers in the private sector. The court agrees.

In order for a private entity to undergo constitutional scrutiny, there must be "a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (quoting Leshko v. Servis, 423 F.3d 337, 339

---

[7] Section 1983 serves as a statutory tool for enforcing the Fourteenth Amendment. Lynch v. Household Finance Corp., 405 U.S. 538, 545 (1972). As a general matter, courts regard the Fourteenth Amendment's "state action" requirement as analogous to the requirement of action "under color of state law." Lugar 457 U.S. at 935. Although some distinctions could be drawn, they need not be addressed in this case. Id. at 935, n. 18. Therefore, plaintiffs' Equal Protection Clause claims will be analyzed through the lens of Section 1983.

(3d Cir. 2005)).  Whether this nexus exists is an inquiry subject to the following three broad tests:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir.1995)).

Here, plaintiffs' allegations fail to meet all three tests.  Starting with the first one, "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state," the complaint only provides that defendant is an entity engaged in the business of manufacturing window coverings. (Doc. 1, Compl. ¶ 13).  The first test "imposes a rigorous standard that is rarely satisfied, for while many functions have been traditionally performed by government, very few have been exclusively reserved to the State." Robert S. v. Stetson Sch., Inc., 256 F.3d 159, 165-66 (3d Cir. 2001) (quoting Mark, 51 F.3d at 1142 and Flagg Bros. v. Brooks, 436 U.S. 149 (1978)).  For instance, this standard was not satisfied even when a private bus company had contracted with a school district to transport students to and from school. Black by Black v. Indiana Area Sch. Dist., 985 F.2d 707 (3d Cir. 1993).  The Third Circuit reasoned in Black that "while [the company was] carrying out a state program at state expense, they

16

were not performing a function that has been traditionally the exclusive

prerogative of the state and there was no state regulation that compelled or even

influenced the [company's] conduct." Id. at 710-11 (internal quotation marks and

citations omitted).

In the case at hand, plaintiffs do not meet the required threshold.  Plaintiffs

have not even alleged in one paragraph of the complaint that defendant's

COVID-19 vaccination policy is "fairly characterized" as a state action.  To the

extent that plaintiffs argue that defendant performed a function traditionally within

the exclusive province of the state by implementing the COVID-19 vaccination

policy, their argument fails.  Numerous courts have ruled that a private entity's

creation and implementation of a COVID-19 vaccination policy for its employees

fails to meet the heavy burden imposed by this test.  See Finkbeiner, 623 F.

Supp. 3d at 467-68 (rejecting the argument that a private entity assumed the role

of the state and acted under the color of state law when it implemented a COVID-

19 vaccine mandate); see also Boyd v. Shriners Hosp. for Child., 2024 WL

5263009, at *2 (W.D. Pa. Dec. 31, 2024) (agreeing "with the weight of authority

addressing this issue that a private entity's creation and implementation of a

[COVID]-19 vaccine policy for its employees fails to meet [the] exacting standard

[imposed by this test]."); Bishop v. Univ. of Scranton, 2023 WL 4565468, at *4

(M.D. Pa. July 17, 2023) (rejecting "[plaintiff's] assertion that the [private entity's]

adoption of a policy similar to the federal and Pennsylvania health regulation regarding COVID-19 converted the [private entity's] action into that of the state for the purposes of [the plaintiff's] constitutional claims.").  Moreover, the complaint contains no allegations that defendant is subject to state regulation or receives state funding. In any event, even assuming such allegations had been made, plaintiffs' arguments would nevertheless fail.  See e.g. Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for the purposes of the Fourteenth Amendment."); see also Black by Black, 985 F.2d at 710 (holding that a private entity does not become a state actor merely by carrying out a state sponsored program and receiving state funding, when the nature of its activity is not a function traditionally within the exclusive prerogative of the state). Thus, plaintiffs fail the first test.

As for the second "close nexus" test, plaintiffs must prove that the government is responsible for the conduct. Borrell v. Bloomsburg Univ., 870 F.3d 154, 160 (3d Cir. 2017) (citing Blum v. Yartsky, 457 U.S. 991, 1004 (1982)). Tasks carried out by private entities with the approval or acquiescence of the state still fail to qualify as a state action. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999).

Upon review of the complaint, plaintiffs failed to allege how the government was responsible for defendant's COVID-19 vaccination policy. There are no allegations that defendant acted in concert or even with the acquiescence of the government. On the contrary, plaintiffs admit in their complaint that defendant enacted its COVID-19 vaccination policy "[w]ithout any official mandate from the federal or state government." (Doc. 1, Compl. ¶ 1). This admission is fatal to plaintiffs' Section 1983 claims against the defendant.

Lastly, the third "close nexus" test requires a showing that the "State has so far insinuated itself into a position of interdependence with" the actor so that "it must be recognized as a joint participant in the challenged activity[.]" Krynicky v. University of Pittsburgh, 742 F.2d 94, 98 (3d Cir. 1984) (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)) (alterations in original). This test requires a symbiotic relationship between the state and the alleged state actor. Mark v. Borough of Hatboro, 51 F.3d 1137, 1143 (3d Cir. 1995). For example, in Burton, "actions taken by the University of Pittsburgh and Temple University constitute[d] state action because the universities 'receive present financial support and the state has committed itself to future financial aid and sets an annual appropriation policy and tuition rate." Krynicky, 742 F.2d at 102.

Here, the complaint not only fails to allege state action, but it also fails to identify the governmental entity involved and its relationship with the defendant.

Per plaintiffs' allegations, the government was not involved in defendant's decision requiring its employees to comply with its COVID-19 vaccination policy.[8] Consequently, defendant's motion to dismiss the Section 1983 claims in Count II will thus be granted.[9]

### 3. Leave to Amend

In their opposition to the motion to dismiss, plaintiffs requested an opportunity to amend the complaint to include their religious exemption requests and adequately plead their *prima facie* religious discrimination case. (Doc. 17, Pl. Br. in Opp. at 8-9).

If a civil rights complaint is subject to dismissal for failure to state a claim, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245. Upon review of the

---

[8] The "symbiotic relationship theory" of state action has been rejected by other courts in the context of a vaccination mandate as well. See Boyd, 2024 WL 5263009, at *2 (citing Horsley v. Kaiser Found. Hosps., Inc., 2024 WL 3956313, at *7 (N.D. Cal. Aug. 26, 2024)).

[9] Plaintiffs indicate in their brief in opposition that defendant was purchased by Clearlake Capital Group, L.P. ("Clearlake") on July 28, 2021. (Doc. 17, Br. in Opp. at 2). Exhibit A to the plaintiffs' opposition brief contains an article announcing that Clearlake will acquire Defendant Springs Window Fashion. (Id. Ex. A). Exhibit B provides additional information about Clearlake's mission as an investment firm. (Id. Ex. B). Exhibit C contains a Forbes 500 article listing America's 400 wealthiest people, which includes José F. Feliciano and Behdad Eghbali, allegedly the co-owners of Clearlake. (Id. Ex. C). Plaintiffs admit that they introduce new facts with the hope that additional discovery will show that Clearlake was coordinating with the federal or state government. (Id. at 15). As previously stated, the court will not allow plaintiffs to amend the complaint through their brief in opposition, see Pennsylvania ex rel. Zimmerman, 836 F.2d at 181, but will consider these exhibits in Section 3 of this memorandum when evaluating whether amendment of the plaintiffs' Section 1983 claims would be futile.

plaintiffs' vaccine exemption requests, (Doc. 17-5, Pl. Br. in Opp. Ex. D), the court cannot definitively conclude that plaintiffs will be unable to plausibly allege religious discrimination claims under Title VII and the PHRA. Thus, plaintiffs will be permitted leave to file an amended complaint to include each of their religious exemptions in support of such claims.

Plaintiffs' amendment, however, will be limited to their religious discrimination claims under Title VII and the PHRA and not their Equal Protection Clause claims under Section 1983. To the extent it bears on the matter, a review of the exhibits in plaintiffs' brief in opposition reveals no discernible connection between defendant and the government. (Doc. 17-5, Pl. Br. in Opp. Ex. A, B, C). Consistent with the court's analysis in Section 2 above, these articles fail to demonstrate that a private entity such as defendant performed a function traditionally within the exclusive prerogative of the state under the first "close nexus" test. Kach, 589 F.3d at 646. Indeed, various courts have held that a private entity's creation and implementation of a COVID-19 vaccination policy for its employees fails to satisfy the heavy burden imposed by this test. See Finkbeiner, 623 F. Supp. 3d at 467-68; see also Boyd, 2024 WL 5263009, at *2; Bishop, 2023 WL 4565468, at *4.

Additionally, documents indicating that the defendant was acquired by an investment firm owned by wealthy individuals has no connection to the second

21

"close nexus" test, which requires a showing that defendant acted in concert with state officials.  As stated above, even when a private entity acts with the approval or acquiescence of the state, its conduct does not amount to a state action. Am. Mfrs. Mut. Ins. Co., 526 U.S. 40 at 52.  Other courts have ruled that facilitation of a government-funded vaccine program is not a public function that converts a private entity into a state actor. See Finkbeiner, 623 F. Supp. 3d at 468; see also Boyd, 2024 WL 5263009, at *2.

Finally, these documents do not demonstrate a symbiotic relationship between the defendant and the government that would make the defendant a state actor under the third "close nexus" test.  Taking this further, financial assistance and state regulations are still insufficient to turn the actions of a private institution into "state actions." See Boyd, 2024 WL 5263009, at *2 (rejecting plaintiff's allegations that "Pennsylvania's COVID-19 emergency medical countermeasure program is 'intimately regulated, licensed, and funded' such that it must be recognized as a 'joint participant' in [defendant's] vaccination policy."). See also Finkbeiner, 623 F. Supp. 3d at 468 (stating that "even if the Court takes [plaintiff's] allegation—that she 'believes and therefore avers that [defendant] was working with the federal government in implementing the EUA approved only 'vaccine' mandate'—and expands it to testing, her complaint still fails to show that the government was responsible for the conduct.").

Consequently, granting plaintiffs leave to amend their Section 1983 claim would be futile since they cannot plausibly allege that the defendant, a private entity engaged in the business of manufacturing window coverings, is a state actor.

**Conclusion**

For the reasons set forth above, defendant's motion to dismiss, (Doc. 11), will be granted. Counts I and III will be dismissed without prejudice subject to the plaintiffs filing an amended complaint addressing the deficiencies addressed in this memorandum. Count II will be dismissed with prejudice. An appropriate order follows.

Date: 7/29/25

_____
**JUDGE JULIA K. MUNLEY**
**United States District Court**

23