IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DOREEN BERGER; TESSA             :      No. 4:23cv1557
CHARLES; ANITRA HAMPE;           :
LORI ANN KLOPP; SABRINA          :      (Judge Munley)
SCHOMBURG; LISA STAHL;           :
and RANDY STROUP,                :
                    Plaintiffs   :
        v.                       :
                                 :
SPRINGS WINDOW FASHIONS, a       :
limited liability corporation,   :
                    Defendant    :
········································································

## MEMORANDUM

Plaintiffs Doreen Berger, Tessa Charles, Anitra Hampe, Lori Ann Klopp,

Sabrina Schomburg, Lisa Stahl, and Randy Stroup bring this employment

discrimination action against their former employer, Defendant Springs Window

Fashions ("SWF"), alleging religious discrimination pursuant to Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the

Pennsylvania Human Relations Act, 43 PA. STAT. §§ 951, *et seq.* ("PHRA").[1]

---

[1] According to SWF, the amended complaint incorrectly identifies Springs Window Fashions Manufacturing Co., USA, Inc. as "Springs Window Fashion Manufacturing Co., USA, Inc." The court previously approved the parties' stipulation dismissing Springs Window Fashions Manufacturing Co., USA, Inc., leaving SWF as the sole remaining defendant. (Doc. 21.) Although Springs Window Fashions Manufacturing Co., USA, Inc. is listed in the caption of the amended complaint, the pleading otherwise identifies only SWF as a defendant. (Doc. 25 at ¶ 9.) Therefore, the court declines to treat Springs Window Fashions Manufacturing Co., USA, Inc. as defendant in this action.

Before the court is SWF's partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion will be granted in part and denied in part.

**Background**

On August 18, 2021, SWF implemented a COVID-19 vaccination policy requiring all employees to be fully vaccinated by the end of September.[2] (Doc. 25, Am. Compl. ¶ 14).  Employees who could not comply with the policy could request a reasonable accommodation. (Id.)  The policy provided that accommodations would be granted unless they imposed an undue hardship on SWF or endangered the health and safety of others. (Id. ¶ 23).  Employees who neither complied with the vaccination requirement nor qualified for an accommodation would be placed on unpaid leave pending a determination by SWF's human resources department regarding their employment status. (Id. ¶ 14).

Plaintiffs each requested a religious exemption from the vaccination requirement. (Id. ¶¶ 61, 87, 104, 126, 185, 186, 211).  SWF denied those requests and ultimately terminated plaintiffs' employment. (Id. ¶ 223).

---

[2] These background facts are derived from plaintiffs' amended complaint. At this stage of the proceedings, the court must accept all factual allegations as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

Plaintiffs allege that their requested accommodations were reasonable, would not have imposed an undue hardship on SWF, and that SWF's refusal to accommodate their sincerely held religious beliefs constituted religious discrimination under Title VII and the PHRA. [3] (Id. ¶¶ 31, 216-264).

Count I of the amended complaint asserts a Title VII claim for religious discrimination under a failure to accommodate theory. (Id. ¶¶ 216-32). Count II advances a Title VII religious discrimination claim under a disparate treatment theory. (Id. ¶¶ 233-43). Count III asserts corresponding claims under the PHRA based on both failure to accommodate and disparate treatment. (Id. ¶¶ 244-64). SWF moves to dismiss several of plaintiffs' claims with prejudice. (Doc. 27).

**Jurisdiction**

Because this case is brought under Title VII, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiffs' PHRA claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts

---

[3] Plaintiffs initial complaint asserted claims under Title VII and the PHRA for religious discrimination and failure to provide a reasonable accommodation. (See Doc. 1, Compl. ¶¶ 25-36, 48-53). Plaintiffs also asserted a claim under the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Id. ¶¶ 37-47). The court dismissed the Title VII and PHRA claims without prejudice and dismissed the Section 1983 claim with prejudice. (Docs. 23, 24). Accordingly, the court granted plaintiffs leave to amend only their religious discrimination claims. Plaintiffs thereafter filed an amended complaint consistent with that leave.

have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555)).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic

4

recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiffs' allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiffs, and draws all reasonable inferences in the plaintiffs' favor. Id. (citations omitted).

**Analysis**

In its motion to dismiss, SWF seeks dismissal of several of plaintiffs' claims. (Doc. 27).  Specifically, SWF argues that: 1) Randy Stroup's Title VII and PHRA claims fail to state a claim upon which relief could be granted; 2) Anitra Hampe's Title VII and PHRA claims are time-barred and otherwise fail as a matter of law; 3) Sabrina Schomburg's Title VII claims are untimely; and 4) all of plaintiffs' disparate treatment claims under Title VII and the PHRA fail to state a claim.[4]

---

[4] SWF contends that, with respect to the PHRA claims, plaintiffs combined both disparate treatment  and failure to accommodate theories into Count III. (Doc. 28, Br. in Supp. at 2 n. 2). Accordingly, SWF moves to dismiss Count III but only as to the extent it asserts a disparate treatment claim under the PHRA claim. (Id.)  In their brief in opposition, plaintiffs do not address whether Count III encompasses both theories of liability.  To the extent Count III

The court begins with Hampe and Schomburg's timeliness arguments. The court then turns to Stroup's claims before addressing all plaintiffs' disparate treatment claims.[5]

### 1. Plaintiff Hampe's Claims

SWF first argues that Hampe's Title VII and PHRA claims are time-barred. The court agrees.

*Administrative Exhaustion* – "A plaintiff 'must exhaust all required administrative remedies before bringing ' " suit under Title VIII and the PHRA. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013) (quoting Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir.1997)). To pursue a claim

---

asserts both disparate treatment and failure to accommodate claims, the court applies the same legal standards governing the corresponding claims under Title VII.

For purposes of the religious discrimination claim, the term "religious creed" as used in the PHRA is construed to carry the same meaning as "religion" under Title VII. See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) ("The language of the PHRA is also substantially similar to these anti-retaliation provisions, and we have held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently."); See also Pennsylvania State Univ. v. Com., Pennsylvania Hum. Rels. Comm'n, 505 A.2d 1053, 1056 (Pa. Commw. Ct. 1986) ("In light of the Pennsylvania Supreme Court's favorable view of the United States Supreme Court's interpretation of the federal analogue to the Pennsylvania statute, and the commission's own adoption of the federal law's definition of "religion," there is no sound legal basis for the commission's rejection of the existing judicial interpretation of the reasonable accommodation and undue hardship standards embodied in that self same [sic] definition.").

[5] A plaintiff asserting a claim of religious discrimination may proceed under either a "disparate treatment" or a "failure to accommodate" theory. Abramson v. William Paterson College of N.J., 260 F.3d 265, 281 (3d Cir. 2001); Wallace v. City of Philadelphia, No. CIV.A. 06-4236, 2010 WL 1730850, at *6 (E.D. Pa. Apr. 26, 2010).

6

under Title VII, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and obtain a notice of right to sue. Robinson, 107 F.3d at 1020–21.  The same administrative exhaustion requirement applies to claims brought under the PHRA. Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n. 6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.").

Moreover, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398–99 (3d Cir.1976) (citations omitted).  Thus, a plaintiff's claims must fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996).

*Title VII Claim* – "To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice."[6] Mandel, 706 F.3d at 165 (citing 42 U.S.C. § 2000e–5(e)(1)); see Noel v. The Boeing Co., 622 F.3d 266, 270 (3d

---

[6] States that maintain their own agencies authorized to enforce employment discrimination laws are known as "deferral states." See Mohasco Corp. v. Silver, 447 U.S. 807, 812 (1980); Colgan v. Fisher Sci. Co., 935 F.2d 1407, 1414 (3d Cir. 1991).

7

Cir. 2010), <u>as amended</u> (Oct. 18, 2010), <u>as amended</u> (Oct. 18, 2010) (holding that if a claimant fails to exhaust his or her claim within the requisite time period, that claim is administratively barred).  A plaintiff who fails to timely file an EEOC charge may not thereafter pursue an action in federal court. <u>See</u> <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851, 854 (3d Cir. 2000).

Here, Hampe's Title VII claim accrued no later than October 1, 2021, the date SWF terminated her employment.  That date marks the last alleged discriminatory act giving rise to her Title VII claim.  Accordingly, Hampe was required to file a charge with the EEOC within 300 days of her termination or by July 28, 2022.  She did not.

Instead, 518 days after her termination, on March 3, 2023, Hampe's counsel wrote to the EEOC acknowledging that Hampe "had passed the 180 days statute of limitations to file before the Pennsylvania Human Relations Commission" and that counsel had discovered that a charge "was never filed with the Equal Employment Opportunity Commission."[7] (Doc. 28-1, Def. Ex. 2, EEOC

---

[7] In support of its motion to dismiss, SWF attached Stroup's exemption request documents, Stroup's EEOC-related documents, Hampe's exemption request documents, and Schomburg's EEOC's notice of right to sue. (Doc. 28-1, Exs. 1-4 at ECF pp. 1-34).

A court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Citisteel USA, Inc. v. Gen. Elec. Co.</u>, 78 F. App'x 832, 835 (3d Cir. 2003) (quoting <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)). Furthermore, where a document is integral to or explicitly relied upon in the complaint, it may be considered without

Corresp. at ECF p. 11). Notwithstanding that acknowledgment, counsel requested that the EEOC accept Hampe's charge "despite the fact that it was not filed within the 300 days." (Id.)

The EEOC responded that "the Charge as received is untimely under the statute." (Id. at ECF p. 16). Although the EEOC agreed to docket the charge "as of the date received, April 7, 2023," the EEOC advised that absent additional requested information, it "will dismiss the Charge as untimely and issue a Notice of Right-to-Sue." (Id.)  Nine days later, the EEOC did precisely that.

Hampe does not dispute any of these facts. Instead, she argues that the administrative filing deadline should be equitably tolled. (Doc. 31, Br. in Opp. at 15). Assuming without deciding that the affidavit attached to the brief in opposition may properly be considered at this stage, it nevertheless does not alter the analysis. (Doc. 31-1, Hampe's Affidavit at ECF pp. 1-2).

Tolling "is an extraordinary remedy, and is proper only when the principles of equity would make the rigid application of a limitation period unfair[.]" D.J.S.-

---

converting a motion to dismiss for failure to state a claim into one for summary judgment under Rule 56. Doe, 30 F.4th at 342 (citations and internal quotation marks omitted).

Here, plaintiffs expressly reference their religious exemption requests and their filings with the EEOC and PHRC in the amended complaint. Moreover, plaintiffs do not dispute the authenticity of any of the documents submitted by SWF. Thus, the court will consider these documents in deciding SWF's motion to dismiss.

9

W. by Stewart v. United States, 962 F.3d 745, 750 (3d Cir. 2020) (citation and internal quotation marks omitted).

The Third Circuit has recognized three circumstances in which equitable tolling may apply:

> (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting ... her rights; or (3) where the plaintiff has timely asserted ... her rights mistakenly in the wrong forum.

Id. (citation omitted).

In his affidavit, Hampe's counsel maintains that "Hampe was not advised in writing to file her [PHRC] complaint prior to March 30, 2022."[8] (Doc. 31, Br. in Opp. at 15; see Doc. 31-1, Hampe's Affidavit at ECF p. 1).  Counsel further explains that, after filing the PHRC complaint, his office received an email indicating that a document had been uploaded to the EEOC portal on April 26, 2023. (Id. Hampe's Affidavit at ECF p. 1).  According to counsel, the EEOC later mailed correspondence stating that an email concerning that document had originally been sent on April 26, 2023, but the letter itself was not received until July 11, 2023. (Id. at ECF p. 2).

---

[8] Hampe admits that counsel of record assisted her in preparing her PHRC complaint. (Doc. 31, Br. in Opp. at 15).

Hampe also argues that equitable tolling is appropriate because SWF suffered no prejudice, having long been aware that Hampe and several of her coworkers intended to pursue religious discrimination arising out of their terminations. (Id.) Neither argument is persuasive.

First, Hampe has not demonstrated that she diligently pursued her rights. Ignorance of the law does not warrant equitable tolling. See Sch. Dist. of City of Allentown v. Marshall, 657 F.2d 16, 21 (3d Cir. 1981) (rejecting ignorance of law as basis for equitable tolling).  Indeed, a "plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim." Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009) (citation omitted).  Nor does equitable tolling extend to "'a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline." Holland v. Fla., 560 U.S. 631, 651-52 (2010) (citation and internal quotation marks omitted).

Here, the affidavit establishes, at most, that counsel overlooked the applicable filing deadlines and later attempted to cure that omission.  Those circumstances do not constitute the type of extraordinary impediment required to invoke equitable tolling.  Second, the absence of prejudice to SWF is beside the point.  Equitable tolling turns on whether extraordinary circumstances prevented

11

a plaintiff from timely asserting her rights, not whether the defendant had notice of the underlying claims.

Accordingly, Hampe has failed to establish any basis for equitably tolling the 300-day filing period. Because Hampe did not timely file an EEOC charge, her Title VII claims are administratively barred. See Wiggins v. Universal Prot. Serv., LLC, No. 23-1054, 2023 WL 5014082, at *3 (3d Cir. Aug. 7, 2023); see also Valentin v. Manpower Grp. Sols., 792 F. App'x 208, 210 (3d Cir. 2019) ("Title VII requires a claimant in Pennsylvania to file a charge with the EEOC within 300 days of an unlawful employment practice. Absent the filing of such a charge, a claim for relief under federal law may not proceed.").

*PHRA Claims* – The result is no different under the PHRA. To pursue a claim under the PHRA, a plaintiff must file an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the alleged act of discrimination. See Mandel, 706 F.3d at 164 (quoting 43 Pa. Stat. § 959(h)). "Whether a plaintiff has initiated PHRC proceedings under the PHRA is a state law issue.... EEOC procedures are not a sufficient surrogate for PHRC remedies." Id. (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 926–27 (3d Cir. 1997)).

Here, Hampe's counsel expressly acknowledges in his affidavit that, "[o]nce it was discovered . . . that Ms. Hampe's complaint had not been filed within 180

12

days from her discharge on October 1, 2021, we immediately filed her complaint before the PHRC on May 27, 2022." (Doc. 31-1, Hampe's Affidavit at ECF p. 1). Counsel's affidavit therefore confirms that the PHRC complaint was untimely.

Hampe advances the same equitable tolling arguments with respect to her PHRA claims. For the reasons already discussed, those arguments are unavailing. Hampe has not identified any extraordinary circumstances that prevented her from timely filing her administrative complaint with the PHRC. Accordingly, Hampe's PHRA claims are likewise time-barred.[9] See Mandel, 706 F.3d at 165 ("We conclude that [plaintiff's] PHRA claims are time barred and thus affirm the District Court's grant of summary judgment in [defendant's] favor on the PHRA claims [.]").

---

[9] SWF also argues that Hampe claims are time-barred because she failed to commence this action in federal court within the applicable limitations period. (Doc. 28, Br. in Supp. at 13-18). SWF further contends that, even if the action is timely, Hampe fails to state a claim upon which relief could be granted. (Id.) Because the court concludes that Hampe's Title VII and PHRA claims are time barred, it need not address SWF's remaining arguments for dismissal.

However, it bears mentioning that Hampe failed to timely commence her Title VII claims in this court. Under Title VII, once the EEOC issues a notice of right to sue, the charging party has 90 days to file a civil action. 42 U.S.C. § 2000e-5(f)(1). Otherwise, the right to sue on the underlying charge is lost. Id. The Third Circuit has "strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001) (citing at Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 176 (3d Cir. 1999)).

Here, the EEOC issued a notice of right to sue to Hampe on April 26, 2023. (Doc. 28-1, Def. Ex. 2, EEOC Corresp. at ECF p. 19). Hampe did not file this action until September 18, 2023, approximately 145 days after the EEOC issued the notice of right to sue. Thus, Hampe's Title VII claims are also time-barred.

13

Therefore, all of Hampe's Title VII and PHRA claims for religious discrimination will be dismissed with prejudice as untimely.

### 2. Plaintiff Schomburg

SWF next argues that Schomburg's Title VII claims are untimely because she failed to commence this action within ninety days of receiving her notice of right to sue. (Doc. 28, Br. in Supp. at 18). The court agrees.

Under Title VII, a plaintiff must file suit in federal court within ninety days of receiving the EEOC's notice of right to sue. 42 U.S.C. § 2000e–5(f)(1); see also Burgh, 251 F.3d at 470. "The statutorily-created ninety-day period starts when either the claimant or her attorney receives a right-to-sue letter, whichever is earlier." Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 n. 1 (3d Cir. 1999) (citing Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 92–93 (1990)).

Moreover, "[a] letter is 'received' when it is delivered to a claimant's residence or post office box, not when the claimant has actual physical possession of the letter." Edwards v. Bay State Mill. Co., 519 F. App'x 746, 748 (3d Cir. 2013) (citing Ebbert v. DaimlerChrysler Corp., 319 F.3d 103, 115 n. 15 (3d Cir. 2003)). "When the actual date of receipt is known, that date controls; where the actual date of receipt is unknown, courts will presume receipt took place three days after the EEOC mailed it." Edwards, 519 F. App'x at 748 (citing Seitzinger, 165 F.3d at 239).

14

In this case, the EEOC mailed Schomburg's notice of right to sue to her home address on or about May 18, 2023. (Doc. 28-1, Def. Ex. 4, Schomburg's Notice of Right to Sue at ECF p. 32).  Schomburg does not dispute that the EEOC mailed the notice to her, nor does she contend that she did not receive it. Likewise, Schomburg does not dispute that the ninety-day filing deadline expired on August 16, 2023.  Nevertheless, Schomburg did not commence this action until September 18, 2023.

Instead, Schomburg argues that equitable tolling is warranted because her PHRC complaint was dual filed with the EEOC, thereby placing the EEOC on notice that she was represented by Stapp Law. (Doc. 31, Br. in Opp. at 14). Schomburg filed her PHRC complaint on May 3, 2022. (Doc. 31, Br. in Opp. at 14).  According to Schomburg, the EEOC failed to provide a copy of the notice of right to sue to her counsel as required, and therefore the notice did not trigger the ninety-day limitations period. (Id.)  The court is not persuaded.

Schomburg cites no authority supporting the proposition that an EEOC's alleged failure to provide a copy of the notice of right to sue to counsel renders ineffective a notice admittedly received by the plaintiff herself.  To the contrary, the Third Circuit has made clear that the ninety-day filing period begins when either the claimant or her attorney receives the notice of right to sue, whichever occurs first. Seitzinger, 165 F.3d at 239 n. 1.  Because Schomburg does not

15

dispute that she received the notice of right to sue, whether her counsel also received a copy has no bearing on the timeliness of her Title VII claims.

Nor does counsel's affidavit alter this conclusion.  Counsel avers that his "office has no record of any emails, letters, facsimiles, or any correspondence" from the EEOC relating to Schomburg. (Doc. 31-2, Schomburg's Affidavit at 1). Counsel further states that "records received from the EEOC indicated an attorney was copied at a different law firm in Milton, Pennsylvania." (Id.)  The record, however, does not support this assertion.

A review of the notice of right to sue reflects that the EEOC copied the law firm that represented SWF, which is located in Montgomery, PA. (Doc. 28-1, Def. Ex. 4, Schomburg Notice Of Right To Sue at ECF p. 32).  No attorney or law firm located in Milton, Pennsylvania appears on the notice of right to sue. (Id.)

Accordingly, because Schomburg failed to commence this action within ninety days of receiving her notice of right to sue, her Title VII claims are untimely and will be dismissed with prejudice.[10]

### 3. Stroup's Title VII/PHRA Failure to Accommodate Claims

The court next turns to Stroup's Tile VII and PHRA claims predicated on a failure to accommodate theory.

---

[10] SWF does not seek dismissal of Schomburg's PHRA claims on timeliness grounds.

Title VII requires employers to reasonably accommodate an employee's sincerely held religious beliefs or practices unless doing so would impose an "undue hardship" on the employer. See 42 U.S.C. § 2000e(j).  To establish a *prima facie* case of religious discrimination based on a failure to accommodate theory, an employee must show that (1) he held a sincere religious belief that conflicted with a job requirement, (2) he informed his employer of that conflict, and (3) he was disciplined for failing to comply with the conflicting job requirement. Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania, 877 F.3d 487, 490 (3d Cir. 2017); see also Webb v. City of Philadelphia, 562 F.3d 256, 259 (3d Cir. 2009).

Nonetheless, the *prima facie* case is an evidentiary standard, as opposed to a pleading requirement. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016); see also Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002).  At this juncture, plaintiffs need not establish each and every element of a *prima facie* case to survive a motion to dismiss, rather "it is enough for [them] to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [their] claims." Connelly, 809 F.3d at 789.

SWF maintains that Stroup fails to satisfy even that standard because his objection to the COVID-19 vaccination policy was not religious in nature. (Doc. 28, Br. in Supp. at 7-8).  According to SWF, Stroup's objection was grounded

17

instead in political, philosophical, or sociological beliefs. (Id.)   That said, SWF does not dispute the remaining elements of Stroup's failure to accommodate claim—namely, that Stroup informed defendant of the alleged conflict between the vaccination requirement and his asserted beliefs, or that SWF terminated his employment after denying his accommodation request.  The parties' dispute thus distills to a single question: whether Stroup has plausibly alleged that his objection to the vaccination policy was based upon a sincerely held religious belief or practice.

In support of its position, SWF relies on Stroup's religious accommodation request form.  For instance, when asked to describe the belief or practice that necessitated his request for accommodation, Stroup responded "Freedom of Choice. Responsibility of taking care of my body." (Doc. 28-1, Ex. 1, Accom. Request at ECF p. 3).  Likewise, when asked what had changed since receiving prior vaccination, Stroup answered "I'm against any vaccine that someone says I must take. Especially by someone with NO medical training." (Id.)

SWF also points to the letter Stroup submitted in support of his accommodation request. (Doc. 28-1, Ex. 1, Accom. Request Form at ECF p. 7). That letter makes no explicit reference to religion.  Instead, it invokes the "Nuremberg Code" and "the right to exercise free power of choice." (Id.)  Those

18

allegations, standing alone, might lend support of SWF's position. The analysis, however, does not end here.

Recently, the Third Circuit explained that a religious accommodation may proceed under two distinct theories. Federoff v. Geisinger Clinic, No. 24-2844, 2026 WL 195416, at *4 (3d Cir. Jan. 26, 2026) (citing Shelton v. Univ. of Med. & Dentistry of New Jersey, 223 F.3d 220, 226 (3d Cir. 2000))). An accommodation may be unreasonable because it conflicts with a sincerely held religious belief or practice. Id. Alternatively, even when no religious conflict exists, an accommodation may nevertheless be unreasonable under the circumstances. Id. (citing Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 71 (1986))).

Because the parties' dispute turns on whether Stroup's objection was religious in nature, the court begins with that issue.

To determine whether a belief is religious, the Third Circuit applies the three-factor test announced in Africa v. Commonwealth of Pennsylvania, 662 F.2d 1025, 1032 (3d Cir. 1981). Under Africa:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

Id. (citing Malnak v. Yogi, 592 F.2d 197, 207–10 (3d Cir. 1979)).

19

The first factor examines whether the asserted beliefs "consider and attempt to come to terms with what could best be described as 'ultimate' questions-questions having to do with, among other things, life and death, right and wrong, and good and evil." Id. at 1033 (quoting Founding Church of Scientology v. United States, 409 F.2d 1146, 1160 (D.C. Cir. 1969)). The second factor asks whether those beliefs form part of a "comprehensive belief system," rather than an isolated moral or philosophical teaching. Id. at 1035. As the Third Circuit observed, "religion is not generally confined to one question or one moral teaching; it has a broader scope. It lays claim to an ultimate and comprehensive 'truth." Id. (quoting Malnak, 592 F.2d at 209)). Finally, the third factor considers whether the asserted beliefs bear the "formal, external, or surface signs" commonly associated with recognized religions, including "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observance of holidays and other similar manifestations associated with the traditional religions." Id. at 1035-36 (quoting Malnak, 592 F.2d at 209)).

Although certain portions of Stroup's accommodation request emphasize concepts such as personal autonomy and freedom of choice, the request cannot be viewed in isolation. The remaining allegations in the amended complaint provide additional context and, at this stage, plausibly allege that Stroup's

objection to the COVID-19 vaccination policy was rooted in sincerely held religious beliefs.

With respect to the first Africa factor, Stroup alleges that he has been a devout Christian for approximately 35 years and remains an active member of the New Life Church. (Doc. 25, Am. Compl. ¶¶ 192, 196).  According to Stroup, he consulted scripture before deciding whether to receive the COVID-19 vaccine, prayed about the issue, and believes God instructed him not to receive the vaccine. (Id. ¶¶ 202, 203).  Stroup further alleges that "he believes his body is a temple of God and the Holy Spirit, and receiving the vaccine would contradict his belief." (Id. ¶ 205).  Construed in the light most favorable to Stroup, these allegations concern fundamental questions of religious doctrine and moral obligation rather than mere personal preference.  At this stage, they are sufficient to satisfy the first Africa factor.

The amended complaint likewise plausibly satisfies the second Africa factor. Stroup does not allege an isolated objection to a single vaccine.  Rather, he alleges that his opposition stems from a broader Christian belief system. Specifically, Stroup asserts that he "reads the Bible . . . daily[,]" endeavors to live his life according to Christ's teachings, and "believes that receiving the COVID-19 vaccine, which contains aborted fetal cells, is a Sin" inconsistent with his faith. (Id. ¶¶ 194-95, 206).  Taken as true, these allegations plausibly describe a

21

comprehensive religious belief system rather than a standalone moral or philosophical conviction.

Finally, Stroup has adequately alleged the third <u>Africa</u> factor.  He asserts that after SWF announced its COVID-19 policy, he sought spiritual guidance from Robert Lauver, Senior Pastor of the New Life Church. (<u>Id.</u> ¶ 201).  Pastor Lauver thereafter authored a letter supporting Stroup's accommodation request, which Stroup submitted to SWF with his request for a religious exemption.  In that letter, Pastor Lauver explained that:

> Although there are various objections that we have towards this shot, God created us in the beginning . . . we have no idea what is being placed into our bodies, which belong to God[.]  Our church tenets state that people should be allowed the freedom to make personal choices as to their health and life as they feel directed by God's Word, the Bible, and not to be dictated to by the government to do something that is against their faith and contrary to the teaching of the Bible.

(Doc. 28-1, Ex. 1, Accom. Request at ECF p. 6).  These allegations, together with Stroup's participation in an organized church led by clergy, sufficiently allege the formal and external characteristics associated with a recognized religion. Accordingly, the court is satisfied that Stroup has plausibly alleged the third <u>Africa</u> factor.

Whether an employee's professed beliefs are sincerely held often presents a difficult inquiry, particularly where, as here,  the asserted beliefs are challenged

22

as nontraditional.  Fallon, 877 F.3d at 490. "[C]ourts in this sense are not free to reject [religious] beliefs because they consider them 'incomprehensible.' " United States v. Seeger, 380 U.S. 163, 185 (1965).  The law does not require religious beliefs to be "acceptable, logical, consistent, or comprehensible to others[.]" Thomas v. Rev. Bd. of Indiana Emp. Sec. Div., 450 U.S. 707, 714 (1981).

At this stage of the proceedings, the court must accept Stroup's well-pleaded factual allegations as true and draw all reasonable inferences in his favor.  Doing so, the court concludes that Stroup has plausibly alleged that his objection to SWF's vaccination policy was based upon a sincerely held religious belief.  Whether discovery ultimately supports those allegations is a question for another day.  SWF remains free to renew its arguments on a more fully developed record at the summary judgment stage.  Accordingly, SWF's motion to dismiss Stroup's Title VII and PHRA failure to accommodate claims will be denied.

### 4. Plaintiffs' Title VII/PHRA Disparate Treatment Claims

SWF also seeks dismissal of plaintiffs' remaining Title VII and PHRA claims premised on a disparate treatment theory.[11]

---

[11] "While [plaintiff] advances a disparate treatment claim under both Title VII and the PHRA, we refer to those claims in the singular, as they are governed by essentially the same legal standards." Connelly, 809 F.3d 791 n. 8.

23

To establish a *prima facie* case of disparate treatment, a plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position she sought to obtain or retain; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference that her protected status was a motivating or determinative factor in the employer's decision.[12] Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).  An adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).  Here, SWF does not dispute that plaintiffs' termination qualifies as an adverse employment action. (Doc. 28, Br. in Supp. at 19-21).

A disparate treatment claim arises where a member of a protected class is singled out and treated less favorably than similarly situated individuals based on impermissible criterion. Boyle v. City of Philadelphia, 476 F. Supp. 3d 101, 111 (E.D. Pa. 2020) (citing O'Brien v. City of Philadelphia, 837 F. Supp. 692, 697 (E.D. Pa. 1993)).

---

[12] At the pleading stage, plaintiffs need not elect whether to proceed under a mixed-motive or pretext theory. Nor are they required to establish a *prima facie* case or engage in the burden-shifting analysis prescribed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which becomes relevant only at a later stage of the litigation. Connelly, 809 F.3d at 791.

24

At this stage of the proceedings, however, plaintiffs need only allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence" of a *prima facie* case of discrimination under a disparate treatment theory. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016).

The amended complaint satisfies that standard. Plaintiffs allege that SWF: 1) granted religious accommodation to at least one other employee, including an inside sales representative; 2) permitted certain unvaccinated employees without religious or medical exemption to continue working despite the vaccination policy; 3) exempted other unvaccinated employees who did not share plaintiffs' religious beliefs; 4) treated plaintiffs less favorably than similarly situated employees who opposed vaccination for secular reasons; 5) terminated plaintiffs while allowing other unvaccinated employees to remain employed; 6) replaced plaintiffs' with employees of different religious beliefs; and 7) considered plaintiffs' religious beliefs in deciding to terminate their employment. (Doc. 25, Am. Compl. ¶¶ 16, 34, 236, 240, 241, 242, 243). That is sufficient to survive a motion to dismiss. See Fowler v. UPMC Shadyside, 578 F.3d 203, 211-12 (3d Cir. 2009) ("Although [the] complaint is not as rich with detail as some might prefer, it need only set forth sufficient facts to support plausible claims.").

Accordingly, SWF's motion to dismiss plaintiffs' Title VII and PHRA disparate treatment claims will be denied.

25

**Conclusion**

For the reasons set forth above, SWF's motion to dismiss will be granted in part and denied in part. The motion will be granted as to all of Hampe's claims under Title VII and the PHRA because those claims are time-barred. As such, all of Hampe's claims will be dismissed with prejudice and Hampe will be dismissed from this action. The motion will also be granted as to Schomburg's Title VII claims because they were not commenced within the ninety-day limitations period following receipt of her notice of right to sue. Those claims likewise will be dismissed with prejudice.

The motion will be denied in all other respects. Specifically, Stroup's Title VII and PHRA failure to accommodate claims survive dismissal. Additionally, Schomburg's PHRA claims will proceed. Likewise, with the exception of Hampe, the remaining plaintiffs' disparate treatment claims under Title VII and the PHRA survive SWF's motion to dismiss at this stage of the proceedings. Finally, the Title VII and PHRA claims asserted by Doreen Berger, Tessa Charles, Lori Ann Klopp, and Lisa Stahl will remain. An appropriate order follows.

Date: 7/14/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

26